IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>LORRAINE LAGO ENTERPRISES, INC., D/B/A PICCOLO E POSTO; LORRAINE LAGO, INDIVIDUALLY AND PEDRO GONZALEZ, INDIVIDUALLY,<br><br>Defendants. | CIVIL NO. 09-1625 (JAG/CVR) |

## REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Hilda L. Solis, as the Secretary of Labor, United States Department of Labor, (hereafter "Secretary of Labor"), filed a complaint against defendants under Sections 16(c) and 17 of the Fair Labor Standards Act of 1938, (the "Act") for alleged violations of sections 6, 7, 11(c), 15(a)(2) and 15(a)(5).

Defendants represent Lorraine Enterprises, Inc., d/b/a PICCOLO E POSTO, (hereafter "defendants") which is engaged in the restaurant business. Plaintiff Secretary of Labor submits defendants are liable for unpaid minimum wage compensation owing to their employees. The Secretary of Labor also claims defendants failed to compensate employees in their employment for workweeks longer than those prescribed and, thus, claims pay rates owed of not less than one and one-half times the regular rates as overtime compensation. It is the Secretary of Labor's contention defendants have failed to make, keep and preserve adequate and accurate records of their employees and of the wages,

<u>Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.</u>
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 2

hours, and other conditions of employment as prescribed by regulation.  For these claims,

besides the amounts owed for wages and compensation, she seeks liquidated damages

and/or prejudgment interests on said pending compensations, as well as an injunction to

be issued to permanently restrain defendants from violating the provisions of the Act.  The

Amended Complaint as to these claims submitted, as Exhibit A, a list of defendants'

employees.  (Docket No. 45, Amended Complaint).

On March 11, 2011, plaintiff Secretary of Labor submitted a Motion for Partial

Summary Judgment insofar as the violation of unpaid minimum wage compensation by

defendants in the amount of $129,057.22, and/or liquidated damages or prejudgment

interests. The corresponding memorandum of law and a statement of undisputed facts were

also submitted.  (Docket Nos. 52 and 54).  Defendants filed their opposition and their

statement of undisputed facts.  (Docket Nos. 64 and 65).[1]

The court referred these motions to this Magistrate Judge for report and

recommendation.  (Docket No. 66).

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1]   Defendants submitted a motion for summary judgment in reference to the same issue as to the tipped employees and also included a discussion as to the claim for overtime compensation. (Docket No. 58). Since plaintiff Secretary of Labor's request for summary disposition at Docket No. 52 refers solely to the minimum wage consideration, not to overtime, we shall address the former motion filed by defendants in a separate report and recommendation solely as to the issue of overtime compensation for any consideration as to tips being part of minimum wage or not need to  be elucidated in the present report.

as a matter of law." Fed.R.Civ.P. 56(c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174 (1ˢᵗ Cir. 1997).  Fed.R.Civ.P. 56(c).[2]

Pursuant to the language of the applicable rule, as amended in 2010, the party bears the two-fold burden of showing that there is "no genuinely disputed." The party may also sow that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d at 178 since the standards for granting summary judgment remains unchanged under the 2010 amendments.

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortés-Irizarry v. Corporación Insular</u>, 111 F.3d 184, 187 (1ˢᵗ Cir.  1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  *Id.*  Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor."  *Id.*

---

[2]     On April 28, 2010, the Supreme Court of the United States approved amendments to Federal Rule of Civil Procedure 56, effective December 1, 2010.   The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.  *See* <u>Ophthalmic Surgeons, Ltd. v. Paychecx, Inc.</u>, 632 F.3d 31 (1ˢᵗ Cir. 2011).

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1ˢᵗ Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1ˢᵗ Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1ˢᵗ Cir. 1997).

In summary judgment a court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits. 10 A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Prac. & Proc. Civ.* §2722 at 382 (3d ed. 1998).

## LEGAL DISCUSSION

Plaintiff Secretary of Labor seeks partial summary disposition insofar as violations to sections 6 and 15(a)(2) of the Act for defendants' failure to pay the applicable minimum wage each week to tipped employees. The computation of the tips requires consideration for defendants were considered to have improperly taken credit for employees' tips. The tips calculation by defendants could not be credited towards the required minimum wage payment for the employer should have first met the obligation of notifying the tipped employees of the intention to treat tips as satisfying part of the minimum wage obligation.

In addition, the employer also should not have deducted a "spillage fee" from tipped employees for impermissible purposes.  These actions were considered a violation of Sections 6 and 15(a)(2) of the Act.

Plaintiff Secretary of Labor seeks also for a prospective injunction to be issued against defendants for future violations of said Sections 6 and 15(a)(2), and to restrain from continuing to withhold payment of unpaid minimum wage compensation, and prejudgment interest due to the employees.

The submission by the Secretary of Labor in the Motion for Partial Summary Judgment follows the contention raised in the complaint insofar the issue of minimum wage claimed for those employees included in Exhibit A and the relation of said minimum wage calculation with the credit claim by defendants from the tips pooled in this case.  As such, it is proper to keep the sequence of issues as therein presented.

Insofar as lack of notice to tipped employees that would not allow the employer to take tip credit against the minimum wage requirement, the plaintiff, Secretary of Labor, submitted as undisputed fact that defendants were unable to establish they had informed their employees about the tip credit being taken, for which lack of notice was undisputed. (Plaintiff's Undisputed Facts ¶¶29, 31-2, 37-9, 45, 47, 53, and 55-6).

The pooling of tips made at defendants' site was also undisputed.  Furthermore, the employer exercised control over a portion of the employees' tips by distributing same to other employees who were not considered as customarily and  regularly entitled to receive tips, for which the tip pool would be invalid and the employer would not be allowed to take tip credit to setoff the minimum wage with said tips.  The restaurant manager, Mr. Pedro

González, indicated in his deposition having received the benefit of distribution from the tips pooled, which also included receipt by other supervisors, such as kitchen supervisors Walker Quiñones and Marisela Santoni. (Docket No. 53, Exhibit 4, González' depo. pp. 26-27);. (*Id.* p. 27).   Ms Lorraine Lago's deposition indicated their restaurant concept, as being an open area, would have entitled the kitchen staff to be considered by the clients as part of the whole dining experience for which these other individuals were considered entitled by defendants to the pooled tips.

As to the pool tip being invalid, the Secretary of Labor submitted as undisputed there were improper deductions that would not allow the tipped employee to the full benefit of the tips, such as the spillage deduction was used by defendants to cover for fees charged by credit card accepted to pay for customers bills.  From these spillage fee deduction effected from the pooled tips, defendants also paid the tips to expediting cooks, hosts and cooks, as well as defrayed any losses from inventories, cash and equipment due to fault or negligence of restaurant staff, as well as to cover the costs of the food the employees would eat.   As such, it is undisputed defendants carried out the spillage fee and deducted same from the pooled tips. (Exhibit 3, Docket No. 53, Ms. Lago's deposition, pp. 23-24, 27-28).

Defendants' opposition or the statement of undisputed facts as to said Section 3(m) makes no reference as to any notice to employees, but rather addresses the calculation as to those deductions that should be held valid under the provisions.  Thus, it remains undisputed defendants failed to provide the employees notice of the offset allowed by the

section regarding tips against the amount of minimum wages and meet the requirement of notice that also clearly provides as to any tipped employee, unless being informed, the tip credit should not be allowed.

## LEGAL DISCUSSION

### A.  Improper Credit upon Lack of Notice to Tipped Employees.

Under the Act, employers must pay their employees a minimum wage.  Title 29, United States Code, Section 206(a).  In its definition of wage, the Act recognizes under certain circumstances that employers of "tipped employees" may include part of such employees' tips as wage payment.  *See id.*, Section 203(m).[3]  Thus, the Act allows under Section 3(m) for an employer to claim a tip credit to offset a portion of its minimum wage obligation, provided certain requirements are met.

---

[3]    Said Section (m) provides**:**

"Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: *Provided*, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: *Provided further*, That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee. In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--

(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Plaintiff Secretary of Labor submits defendants violated Section 6 and 15(a)(2) of the Act for failing to provide notice to tipped employees of the employer's intention to treat tips as satisfying part of their minimum wage obligation.[4]  A tipped employee is statutorily defined as any employee engaged in an occupation in which the employee customarily and regularly receives more than $30.00 a month in tips. Title 29, United States Code, Section 203(t).

The Act would require that, to be allowed credit for the tips as to the minimum wage requirements, the employer: (1) informs the employee of the provisions of section 3(m), and (2) that all tips received by such employee have been retained by the employee, except that said section does not prohibit the pooling of tips among employees who customarily and regularly receive tip.  *Id.*, 29 C.F.R. §531.51.

The Fair Labor Standards Act allowing employer to take tip credit under certain circumstances in order to meet minimum wage requirement requires, at very least, that the employer gives employees notice of its intention to treat tips as satisfying part of employer's minimum wage obligation. *See* Martin v. Tango's Restaurant, Inc., 969 F.2d 1319 (1st Cir. 1992); *see also* Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1992) (Section 3(m) allows an employer to reduce a tipped employee's wage below statutory minimum by an amount to be made up in tips, but only if the employer informs the tipped employee that his/her wage is being decreased under section 3(m)'s tip-credit provision.  If the employer

---

[4]  The Secretary of Labor submits that the minimum wage rates used to compute back wages in this case are: (1) $5.15 per hour from March 6, 2006 through July 23, 2007; (2) $5.85 per hour from July 24, 2007 through July 23, 2008; (3) $6.55 per hour from July 24, 2008 through July 23, 2009 and (4)  $7.25 per hour from July 24 through August 2, 2009. Exhibit 5, Docket No. 53, Statement

cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage).

The Secretary of Labor submits as undisputed fact the employer defendant herein was not able to establish it had informed its employees about the tip credit being taken. (Plaintiff's Undisputed Facts ¶¶29, 31-2, 37-9, 45, 47, 53, 55-6). To the contrary, the General Manager of defendant employer, Mr. Pedro González, testified that he operated the restaurant since 2006 to the present and the waiters were not notified their tips would be counted as part of their wages. (Undisputed Facts ¶¶26, 27-8). The restaurant manager Pedro González indicated since he started working at the restaurant initially as a waiter no one had explained to him that tips would be considered part of wages. (Docket No. 53, González' depo., Exhibit 4, pp. 32-33). Neither were the waiters explained when they were hired as to this fact. (*Id.*). No record was kept as to the cash tips received by the waiters. (*Id.*, pp. 34-35).

As such, a lack of notice as to the offset of tips against minimum wage is undisputed.

## B. Tip Pooling Agreement -Employees Customarily and Regularly Receive Tips.

Not only a lack of notice as to the offset of tips against minimum wage is undisputed, but in the instant case, upon a pooling of tips received by employees, these were later distributed among employees considered not customarily and regularly those who receive tips. As such, the employer could be considered to have retained part of the tips received by the employees. An employer is not eligible to take tip credit and would be liable for reimbursing an employee the full minimum wage that employee would have earned if the

employer exercises control over a portion of the employee's tips.  Section 203(m) precludes even an agreement between an employer and a tipped employee that any part of tips received by such employee belongs to the employer.  Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464 (5th Cir. 1979).

The Secretary of Labor submits the tip credit cannot be taken against the minimum wage obligation in the case by defendants Lorraine Enterprises, Inc. d/b/a PICCOLO E POSTO since the pooling of tips was subsequently distributed to other employees besides those included in Exhibit A who are not considered as customarily and regularly  entitled to receive tips.  Thus, a tip pool would be invalid under Section 203(m) which authorizes tip pools only among employees who customarily and regularly receive tips.

Although defendants herein have recognized that tips were indeed distributed among cooks, sous chefs and line cooks, the interpretation of these employees as not those customarily and regularly entitled to tips is considered too narrow.  Defendants submit customers in giving their tips were rewarding not only the service of the waiters but the whole experience received in the restaurant to include kitchen employees, as well.

It has been construed that, in order for a tip pool to be valid under Section 203(t), an employee receiving same must be a tipped employee, that is, one that customarily and regularly receives tips –as required by Section 203(m)– and be one engaged in an occupation in which he/she customarily and regularly receives tips. Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 292 (1st Cir. 1998).  Such would be the case of restaurant hosts and bus persons, an even maitre d', in addition to waiters.

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 11

In the case of defendants Lorraine Enterprises, it is undisputed the cooks and other kitchen personnel, and even the restaurant manager Mr. Pedro González, received the benefit of distribution from the tips pooled –from the deducted amount of spillage taken from the tips– distribution was given to supervisors, including González, once or twice a month. (Docket No. 53, Exhibit 4, González' depo. pp. 26-27).  Distribution was also given to other supervisors, including kitchen supervisors such as Walker Quiñones and Marisela Santoni.  (*Id.* p. 27).

In *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010), tip pooling was  not invalidated although it included in distribution thereafter kitchen employees who were considered as employees who do not customarily and regularly were tipped, but in said case the employer restaurant could not and did not claim a tip credit under the Act.[5]  To the extent that an employer claiming a tip credit requires tipped employees to share tips through a tip pool, participants in the pool must be limited to employees who customarily and regularly receive tips.[6]  See James Lockhart, J.D., *Tips as Wages for Purposes of Federal Fair Labor Standards Act*, 46 ALR Fed. 2d 23.

Thus, it is undisputed the pooled tips were distributed also to employees who do not customarily and regularly are considered to receive tips, to include kitchen supervisors, cooks, restaurant manager and others.

---

[5] *Cumbie* clarified other cases interpreting the tip pooling different as involving situations in which employers satisfied their entire minimum-wage obligation out of tips. *Doty v. Elias*, 733 F.2d 720 (10th Cir. 1984); *Barcellona v. Tiffany English Pub., Inc.*, 597 F.2d 464 (5th Cir. 1979); *Richard v. Marriot Corp.*, 549 F.2d 303 (4th Cir. 1977).

[6] Defendants' submission of having no knowledge that Mr. González, restaurant manager, benefitted from the 2% deduction, does not make the issue disputed since the recipient of this  deduction made a clear assertion as to the use of the spillage fee. (Defts' Undisputed ¶27, Docket No. 65)  There was ample evidence to establish other supervisors also benefitted, and kitchen personnel were also provided with tips from the pooled tips.

**C.  Spillage Fee Deducted for Impermissible Purposes**.

Plaintiff Secretary of Labor further submits as undisputed the spillage fee deducted from tipped employees by defendant employer herein entailed a 2% of whatever the employee sold in the restaurant, not solely from the amount of tips pooled, but the full amount charged in the credit card receipt.  Said spillage amount deduction was used to cover for credit card fees charged to the restaurant in accepting credit card charges for customers, pay tips to expediting cooks, allow the hosts and cooks to also participate in the tip pool and to defray losses from inventories, cash and equipment due to fault or negligence of restaurant staff, as well as the costs of the food the employees would eat.  Still, no record was kept by the employer of the meals provided to the employees nor of the inventory losses.  (Exhibit 3, Docket No. 53, Ms. Lago's deposition, pp. 23-24, 27-28).

It is then undisputed the defendant employer accepted credit card, such as Visa, MasterCard and American Express, in addition to debit cards, all of which charged a service fee, which some 90% of the customers use for bill payments at the restaurant.  (Exhibit 3, Ms. Lago's depo. pp. 59-60).  Each credit card would usually charge the payee, defendants d/b/a/PICCOLO E POSTO, a service fee to process the credit charges.

Defendants have submitted plaintiff Secretary of Labor recognized the validity of deducting credit card charges from waiter's tips. (Defts' Additional Undisputed¶23, Docket No. 65).  However, an employer may subtract a sum from an employee's charged gratuity

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 13

or tip which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering the setoff against minimum wages. <u>Myers v. Copper Cellar Corp.</u>, 192 F.3d 546, 554 (6th Cir. 1999).[7]

Still, defendants employer herein deducted from the tipped employees a spillage fee to pay, among other business expenses, the credit card service charge, of which credit card service fee records were not made available, and still as to which a deduction was made to contribute to such expense not solely from the tipped portion of the credit charge amount but from whatever the employee sold in the restaurant. (Exhibit 3, Answer Interrogatories ¶5).

It is then reasonable to agree with the Secretary of Labor's proposition the spillage fee was used for impermissible purposes and seemly to recover from the tipped employees the costs of doing business with credit cards as to all items, food, drinks and service not only the tip amount but from the total credit charged.

By retaining a percentage for "spillage fee" from the pooled tips that defendants attempt herein to claim as tip credit to set off minimum wage requirements, not only tipped employees were unable to retain all the tips they had received but also mandated deductions were made by the employer to pay for its costs of doing its restaurant business. For these reasons, the spillage fee deducted from the pooled tips would not allow defendants to take

---

[7] Nothing in the FLSA evidenced a Congressional intent to compel employers to contribute anything to any customer's tip, including any funds required to "cash out" a charged tip for the benefit of the employee. *See* 29 C.F.R. 531.52 (defining a "tip" to consist, *inter alia*, of money gifted *by a customer* in recognition of service which is received by the employee free of any control by the employer); 531.53 (explaining that tips may include amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips.). Reading sections 531.52 and 531.53 together, it is clear that a charged gratuity becomes a tip only after the employer has liquidated it and transferred the proceeds to the tipped employee; prior to that transfer, the employer has an obvious legal right to deduct the cost of converting the credited tip to cash.

tip credit and to set off these amounts for the Secretary of Labor properly considered same as an invalid tip pool which cannot be credited against the employer's minimum wage requirements.

Defendants claim in their motion for summary judgment the costs of the meals provided to employees should be reasonably considered to be $4.79. No relevant or admissible evidence, as to providing meals to all its employees, that they were informed previously such costs would be deducted from the minimum wage requirement, thus, complying with notice requirements or documents to support the assessed amount of the meals as reasonable were presented. It is insufficient to submit a statement of Ms. Lorraine Lago as to the costs of meals, without more, as uncontested fact ¶19.[8] Neither is the fact that employees knew of the practice of providing meal as sufficient to contest that notice as to the deduction being attributable to the tips needed to be made beforehand to be able to take a credit of tips towards minimum wage requirements. (Docket No. 59, ¶¶17-20).

A party will successfully oppose a motion for summary judgment only when able to present definite, competent evidence to rebut the motion not unsupported self-serving assertions and said sworn testimony –affidavits or depositions– should provide specific factual information based on personal knowledge. *See* Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 12 (1st Cir. 2000)[9] (the mere existence of a scintilla of evidence is insufficient

---

[8]   Ms. Lago's prior deposition testimony was to the effect that no accounts were kept as to the costs of replacement of small wares, except that a 2% was deducted as spillage fee. No record was kept either as to the meals provided to employees. Plaintiff's Exhibit 4, Defts' Exhibit 4, Ms. Lago's depo. pp. 25-26, 28.

[9]   The district court did not abuse its discretion in striking affidavits submitted in opposition to motion for summary judgment where these were presented after defendant moved for summary judgment and no satisfactory explanation provided as to why the prior deposition testimonies had changed. Dupont De Nemours Co., 219 F.3d at 20. Although in this case the request to strike defendants' undisputed statement was not warranted, the issues raised by

to defeat a properly supported motion for summary judgment, and thus, a party opposing summary judgment must present definite, competent evidence to rebut the motion); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000); *cf.* Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997) (A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment").

Furthermore, since defendants were unable to establish the use of said spillage fee nor kept valid record of the alleged meal benefits claimed to have provided to the employees, it remains undisputed the Secretary of Labor's proposition that no amount should be allowed as tip credit in addition to lack of notice to employees beforehand that said deduction would be considered against minimum wage requirements. *See* Myers, 192 F.3d at 555 (the employer must prove that its total deductions from employees' tip incomes did not enrich it, but instead, at most merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period).

As to this issue, the amount deducted from the tipped employees to cover the full amount of credit charges fees did not restore the employer, but placed the burden on the employees to pay for the full costs of doing business with credit cards at the defendants' restaurant.

---

defendants regarding amount to be assessed for meals and for the cost of replacement of small wares to allow spillage fee be deducted failed to dispute plaintiff Secretary's submission these amounts not be credited to meet minimum wage requirements.

## D.  Liquidated Damages / Prejudgment Interest.

Plaintiff Secretary of Labor is requesting defendants be also liable for liquidated damages or, in the alternative, prejudgment interest.  Where an employer continues to use the practice that is in conflict by an administrative interpretation that had been brought to an employer's attention, it fails to satisfy the standard of good faith and if such practice is later determined to violate minimum wage law, the employees would be entitled to liquidated damages in an amount equal to their unliquidated damages.  Richard v. Marriot Corp., 549 F.2d 203 (4th Cir. 1977).  Plaintiff Secretary of Labor submits lacking good faith or evidence to rebut undisputed facts defendants should be considered to have engaged in willful violation of the Act.

The Court of Appeals for the First Circuit citing  Reich v. Newspapers of New Eng., Inc., 44 F.3d 1060, 1079 (1st Cir. 1995), stated "[t]he FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies. (citing 29 U.S.C.  255(a)."  A finding of willfulness is made when the employer has intentionally and consistently failed to keep accurate records of the time worked by its employees [,] ... disguised minimum wage, as well as overtime pay violations, ... did not record the amounts of cash tips [,] ... [and] most salient ... [to] a finding of willfulness, ... [paid] employees off the books.' "  See Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007).

In Oasis, 493 F.3d  at 35, the First Circuit Court of Appeals confirmed the district court's finding of willfulness holding that:  failure to keep adequate payroll records and its intentional manipulation of the records it did keep are sufficient grounds for concluding

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 17

that Oasis did not act in good faith or with a reasonable belief that it was in compliance with the FLSA.[10]

Moreover, a finding of willfulness means that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *See* McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677 (1988); Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club, 577 F.Supp.2d 566 (D. Puerto Rico 2008).

In addition, defendants have not kept any records of the costs of the losses in inventories, cash and equipment nor as to the reasonable value of the meals alleged to have provided to employees to sustain a belief in the spillage fee amount nor deducting from the tipped employees the credit card service fee from the total amount of the credit charges and not merely from the tipped amount as reasonable reimbursement for the cost of clearing with the bank or credit card companies the costs of the tips included in a credit charge. The burden of establishing good faith is substantial. Upon defendants' submission of their summary judgment motion, plaintiff Secretary of Labor extrapolates having been conferring with defendants as of March 7, 2008, regarding the investigation as to labor practices, including the deduction of the 2% spillage fee of the total of each waiter's credit card sales

---

[10] *Cf.* Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 844 (6th Cir.2002) ("[T]he fact that an employer knowingly under-reported its employee's work hours could suggest to a [fact finder] that the employer was attempting to conceal its failure to pay overtime from regulators, or was acting to eliminate evidence that might later be used against it in a suit by one of its employees).

each workweek during the period of March 6, 2006, and it still continued regardless of being questioned up to August 2, 2009. (Ms. Lago's depo. pp. 23-24; Exhibit 2-7, Docket No. 74; Plaintiff's Undisputed Facts ¶¶60-1, 63).[11]

Defendants' opposition refers to prior administrative negotiations with plaintiff Secretary of Labor in regards to these claims. Defendants have recognized they may have incorrectly failed to pay overtime to several non-exempt employees who were incorrectly treated as exempt, as well as paying overtime to waiters using incorrect base wage of $3.70 instead of $2.13, before applying the tip credit instead of doing so based on the full minimum wage. Defendants have also acknowledged deducting a 2% from the total credit card sales from each waiter's wages, as well as deducing the spillage fee for the average costs of replacing small wares (linens, glassware, forks, knives, spoons, etc.) making an assessment as to an amount that should be allowed of $45.43 a week ($9,449.56/208).

Defendants have also established as undisputed fact they allowed tipped employees to cash their tips at the end of the shift and thereafter making the corresponding adjustment in the payroll. Defendants initially assumed the risk of credit card collection by advancing payment in cash to the tipped employees, as well as by allowing them to retain any tip which had been originally paid in cash. Thus, the pooled tips irregularities applied only to those tips charged on a credit card. In addition, defendants also showed they provided meals to the employees as part of the benefits, what was questionable towards to off set against

---

[11] Fed.R.Civ.P. 56 provides the Court may consider all admissible evidence of record.

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 19

minimum wage was the assessment of said meals, how many employees benefitted, and notice beforehand the deduction from the pooled tips was to be made towards credit of minimum wage requirements.

However, defendants still rebut the Secretary of Labor's determinations that certain other employees, such as cooks and sous chefs, were not customarily entitled to tips and the lack of providing as a valid deduction from the employees' wages the average cost of the meals. Thus, although not opposing *in toto* plaintiff Secretary of Labor's partial request for summary judgment, defendants are indeed praying from the court to take notice of their uncontested facts in the application of the law as requested for partial summary disposition, which should result in a reduction of any amount considered owed to the employees.

The investigation raised by plaintiff Secretary of Labor as to which defendants were placed on notice should have provided some persuasive authority the deductions effected as spillage fee were questionable, more so when indicated by the government agency responsible for enforcement of federal wage and hours laws and in the absence of any act by defendants to meet its compliance or affirm themselves of the grounds for keeping such practice. Thus, at least as of March 7, 2008, defendants could not assert good faith in the practice now considered contrary to the requirements of minimum wage compliance insofar as the spillage fee deduction.

Liquidated damages are considered unless an employer can show the court that its actions and omissions were done in good faith and there were reasonable grounds to believe

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 20

said acts and omissions were not a violation of law.  Still, liquidated damages are not considered a penalty but intended as compensation for delay in payment, which prejudgment interests also promote.

A refusal to award liquidated damages is within the district court's discretion. McLaughlin v. Hogar San Jose, Inc., 865 F.2d 12 (1st Cir. 1989).  Upon the amendments effected in the Act which originally mandated liquidated damages, the Portal-to-Portal Act, Section 11, established some lax as by allowing an employer to show the act or omission was in good faith and there was reasonable ground to believe it was not in violation of the Act. Title 29, United States Code, Section 260.[12]  The purpose of the amendment was to mitigate the harshness of the then-strict liability offense of violating Section 216. LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1263 (5th Cir. 1986) (denying indemnity action of the employer against employees not abiding with instructions as to overtime).

The Act would not allow recovery under both prejudgment interest and liquidated damages for liquidated damages are mental to compensate for the delay in payment. Brooklyn Sav. Bank v. O'neill, 324 U.S. 697, 715-16, 65 S.Ct. 895 (1945); Lupien v. City of Marlborough, 387 F.3d 83, 90 (1st Cir. 2005).

---

[12] Section 260 provides:

In any action commenced prior to or on or after May 14, 1947 to recover unpaid   minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended 29 U.S.C.A.  201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

<u>Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.</u>
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 21

Taking into account defendants' actions as above mentioned, the harshness of the liquidated damages, the heavy burden they would impose on defendants' business and their discretionary nature, its is recommended that liquidated damages be denied and instead prejudgment interest be granted as discussed below.

In conclusion, the Secretary avers defendants should pay the unpaid minimum wage compensation of $129,057.22.   In view of the above discussion, it is recommended that said amount be allowed, as requested in plaintiff Secretary of Labor's partial summary judgment, with prejudgment interest to be calculated up until the date of payment of said amount.

**E.  Injunctive Relief.**

Insofar as the issues above discussed regarding minimum wage requirements, pooling of tips, and improper deductions to tipped employees, the Secretary of Labor seeks prospective injunctive relief to enjoin future violations of law.

Section 217 of the Act provides for district courts, for cause shown, to have jurisdiction to restrain violations of section 215, including the restraining of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees.

Regardless of the past violation as to minimum wage discussed above, the violations have not continued either as to minimum wage nor as to the pooling of tips with improper distribution or deductions.  The Secretary of Labor acknowledges defendants are currently in compliance with the minimum wage requirements.  Insofar as compliance with the spillage fee practice, it was discontinued by August 3, 2009.

The issue of whether an injunction is an appropriate remedial measure to prevent future violations of the provisions of the Act, is within the sound discretion of the district court and is reviewed on appeal on abuse of discretion. Reich v. Newspapers of New England, Inc., 44 F.3d at 1081 (*citing* Martin v. Coventry Fire Dist., 981 F.2d 1358, 1362 (1st Cir. 1992)).

Although the matter may be revisited once other issues pending resolution are finally disposed and if a willful violation is further established, at this juncture, and in the absence of  present violations of law, there are insufficient grounds for injunctive relief to be granted.

## CONCLUSION

In view of the foregoing, it is recommended that plaintiff's Motion for Partial Summary Judgment (Docket No. 52) be GRANTED IN PART and DENIED IN PART as follows:

- GRANTED in regards to the payment of minimum wages due of $129,057.22, with prejudgment interest.

- DENIED as to prospective injunctive relief.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and

Hilda L. Solis, Secretary of Labor, et al. v. Lorraine Enterprises, Inc.
Civil No. 09-1625 (JAG/CVR)
Report and Recommendation
Page No. 23

the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint

and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 12th day of May of 2011.

                    s/CAMILLE L. VELEZ-RIVE
                    CAMILLE L. VELEZ-RIVE
                    UNITED STATES MAGISTRATE JUDGE